JUNE TERM,
1838.

Hamuel
v.
State of Missouri.

---

### J. HAMUEL v. STATE OF MISSOURI.

1. An indictment, charging that defendant, as agent of a private company, embezzled certain goods, &c. is bad, the term, *agent*, not being found in the 42d sec. 3d art. of the act concerning Crimes and Punishments. Nor would such an indictment be good under the 40th sec.; that section being intended to apply only to agents of *incorporated* companies.
2. The supreme court will look into the validity of an indictment, whether a motion was made in arrest of judgment in the court below or not.

*J. H. Thorington,* counsel for plaintiff in error:

1. The first count in the indictment is bad and insufficient, and does not show the nature of the agency or employment of the defendant by Arthur, Stearns, & Co.
2. That the verdict is not responsive to the issue, and does not find the prisoner either guilty or not guilty on the charge contained in the indictment; and does not warrant the sentence pronounced by the court.

JUNE TERM, 1838.

Hamuel
v.
State of Missouri.

3. That the conviction is illegal, because the court erred as stated in the bill of exceptions, and by refusing to charge and instruct the jury as requested.

Authorities referred to are, Archbold's C. P. 119; 1 Chitty's Crim. Law, 281, 282—top paging, 190; 1 Chit. Crim. Law, 171—top paging, 116; 2 Morel & Selwyn, 379, 387; 2 Russell on Crimes, 682.

*T. B. Hudson*, counsel for defendant in error:

1. That the circuit court did right in refusing to give the first instruction requested by prisoner's counsel. The defendant in error contends that it was not material for the State to prove that Messrs. Stearns, Arthur & Co. were the actual owners of the property alleged to have been embezzled. A special property of the thing stolen is sufficient, in cases of larceny, to sustain an indictment. The same rule is supposed to prevail in cases of embezzlement—Arch. C. P. 176, 238; Rex v. McGregor, 17; 2 East. 576; 2 Leach, 932.

2. Stearns, Arthur & Co. had not parted with their lien on the property for storage, and inasmuch as the property was in possession of prisoner, who was the agent employed by Stearns, Arthur & Co. for the purpose of keeping the property for them by special agreement.

3. The employment of prisoner by Stearns, Arthur & Co. was fully proven by the testimony, which is set out in the bill of exceptions.

4. It is not necessary that the employment should be permanent—Arch. C. P. 239; Rev. C. 338-9; Rex v. Spencer, Russ. & Ry. 17, 222; 2 Russ. 209; Rev. C. 179. A special property will support the indictment—Rex v. McGregor, Russ. & Ry. 17; Arch. C. P. 179, 238; Rev. C. E. 515; 2 East. P. C. 576.

5. The second and third instructions given by the court below are correct: see testimony which proves prisoner was the agent of Messrs. Stearns, Arthur & Co.—Rev. C. 117.

McGirk, Judge, delivered the opinion of the court.

At the May term of the circuit court for the county of St. Louis, Hamuel was indicted by the grand jury of said county for embezzling certain goods.

The first count charges that on the 20th of May, 1838, in the county of St. Louis, the said Hamuel, being then and there employed as agent to John Arthur, Joseph

JUNE TERM, 1838.

Hamuel.
v.
State of Missouri.

Stearns, and James Arthur, did, by virtue of his said employment as such agent, then and there, and while he was so employed as aforesaid, receive and take into his possession certain goods and chattels, to wit, one engine, fifty brass boxes, and fifty pounds of brass of great value, to wit, of the value of eighty dollars, for and in the name and on account of the said Arthur and Stearns; and the said goods and chattels then and there fraudulently did embezzle, and so the jurors say, on their oaths, that said Hamuel, in manner and form aforesaid, the said goods, &c. did feloniously steal, &c.

The second count charges the defendant with feloniously stealing the said goods, &c.

To this indictment the defendant pleaded "not guilty." The prisoner was tried, convicted, and sent to the penitentiary for two years. It appears by the record that one John Arthur gave evidence for the State, who said he, as one of the firm of Stearns, Arthur & Co. had lately rented in St. Louis a house to the defendant, and that afterwards one Lewis Newell told him—(here the witness was about to tell what Newell told him, when the witness was stopped by Mr. Mullanphy, of counsel for the prisoner, and objected to him stating any thing told to him by Newell. The court decided that witness might state how it happened he came to watch the prisoner, though it should be that Newell told him the prisoner was stealing. There is, in the opinion of the whole court, no error on this point.) The witness then went on to say that about the day of        1838, the prisoner, Hamuel, rented a store from Messrs. Stearns & Co., of which firm witness was one, which firm was composed of John Arthur, James Arthur, and Joseph Stearns, the persons mentioned in the indictment. The prisoner expressed a desire to obtain possession of the store for the purpose of transacting a wholesale grocery business; that there was, at the time the prisoner took possession of the store, one engine, the property of one R. D. Dobbyns, which had been left with said Stearns & Co. for safe-keeping, as commission merchants in the city of St. Louis; that said Dobbyns is still in being; that witness, for himself and co-partners, leased the store to the prisoner for six months. It was agreed, at the time of leasing the store, that the engine should remain in the store, and that the prisoner should have the benefit of the storage therefor; that Stearns & Co. considered themselves liable to Dobbyns for the safe-keeping and re-delivery of the engine to him when the same should be demanded; that there was no

contract or privity of contract for storage or otherwise between the prisoner and Dobbyns; that the brass boxes described in the indictment were certain brass boxes belonging to and part of said engine; that the possession of the store and the key thereof had been delivered to the prisoner; that the next day after the contract, renting, &c. was concluded, the witness received intelligence that the prisoner was removing parts of the engine, which excited witness's suspicion; that the witness, in company with one other person, repaired to a place near the store, and there watched a short time, when the witness discovered the prisoner come out of the store, with parts of the engine tied up in a handkerchief; that the witness followed the prisoner to the finishing store of Mr. Snyder, in the city, where the prisoner untied his handkerchief, and Snyder was weighing the brass boxes, when witness entered and accused the prisoner of having stolen the same; whereupon, the prisoner offered to return the brass boxes, or pay for them. The boxes were then taken back by witness and Snyder to the engine, and found to fit a portion of the engine left in the store. The prisoner took possession of the store about sun down, and on the day following, at 8 o'clock in the morning, was apprehended. Mr. Snyder swears to a part of the transaction as stated by the first witness. There was some other testimony in the case unnecessary to be noticed here. Mr. Thorington, of counsel for the prisoner, prayed the court to instruct the jury:

1. That if they should believe that Arthur & Stearns were not the actual owners of the property named in the indictment, but that the same belonged to another person, that then they must acquit the prisoner.

2. That if they believe the property had been left on storage by the owner with Stearns & Co., and that before the taking by the prisoner, they had left it on storage with the prisoner, that then they must find for the defendant.

3. That if they should believe the prisoner had never been employed or hired by Arthur & Co., or had not any contract with them, except as detailed by the evidence, that then they could not find the prisoner guilty on the count for embezzling, because the contract so proved had not established an employment within the meaning of the statute; which instructions were refused. But the court instructed the jury as follows:

That if, from the evidence, they should be of opinion:

1. That Stearns, Arthur & Co. were responsible to

JUNE TERM,
1838.

Hamuel
v.
State of Missouri.

the absolute owners of the goods taken by the prisoner, and that they were bailees of the same from the owner; and

2. That these articles were entrusted and delivered to Arthur &c. to be kept in the store or warehouse rented to the prisoner by Arthur & Co.; and

3. That those articles were entrusted and delivered to the prisoner by Arthur & Co. to be kept in the store and warehouse, and that the prisoner carried them away with an intention to steal them, they must find the prisoner guilty.

To the refusal to give the instructions asked, and the giving of those given, the prisoner by his counsel excepted, &c.

An indictment, charging that def. as agent of a private company, embezzled certain goods, &c. is bad, the term, *agent*, not being found in the 42d sec. 3d art. of the act concerning Cr. and Pun. Nor would such an indictment be good under the 40th section, that section being intended to apply only to agents of *incorporated* companies.

These instructions are predicated on the idea that the indictment is founded on the 42d section of an act which provides for embezzlement by bailees; and if the indictment had been founded on that branch of the statute, the charge would all be right; but as the indictment does not charge the defendant as bailee, but as agent, the instructions are wrong. The 40th sec. of the 3d art. of the act respecting crimes and punishments, provides that if "any clerk, apprentice, or servant of any private person, or of any copartnership; or if any officer, agent, clerk, or servant of any incorporated company, or any person employed in any such capacity, shall embezzle," &c. In this section the officer, agent, clerk, or servant, must belong to, and be employed by an incorporated company. To make an indictment good under this section, it must charge that there exists an incorporated company, and this must be proved; then it must be charged and proved that the defendant was employed as agent to the company, and in such capacity embezzled. The charge given in the case at bar, declares that if the defendant was proved to be bailee to a private trading company, that he is also agent. The word agent is nowhere mentioned by the act in reference to embezzlement, except in reference to an agent of an incorporated company. No doubt, in the hurry of business, this distinction escaped the observation of the court below. That the legislature did not intend to confound the character of agent in the 40th section named, with a bailee, is more apparent when it is seen, that by section 42, there is a provision for the case of a bailee in terms; thus taking care to describe each character separately, and having done so, it is my opinion that the indictment must charge the offence to the characters as distinguished by the statute in its several sections, and that the proof must fit the

charge. And that proof that one embezzled as a mere servant, is not proof against him if charged as bailee, and so in all other cases. This case comes within the rule, that when an indictment is founded on a statute, all the circumstances which constitute the offence must be laid in the indictment—1 Chit. Crim. Law, 281–2 & 171.

JUNE TERM,
1838.

Hamuel
v.
State of Missouri.

Mr. Hudson, for the State, has produced some authorities to show that in some cases the exact words used by a statute need not be used, but that synonymous words may be used. 1 think no case has been produced, or can be produced, which goes the length contended for by the counsel for the State.

Another question has arisen in this case, which is, whether this court can look into the indictment, there having been no motion made in arrest of judgment. The law says, (R. C. 1834, p. 522,) no exception shall be taken in an appeal or writ of error, to any proceeding in the circuit court, except such as shall have been expressly decided by such court.

The supreme court will look into the validity of an indictment, whether a motion was made in arrest of judgment in the court below or not.

It is the opinion of this court, that this provision being found in a statute regulating practice in civil cases chiefly, perhaps ought only to be applied to civil cases, especially when this provision is compared with another in the R. C. 429, which says no assignment of errors or joinder, shall be necessary in a criminal case; but the court shall proceed on the return thereof, without delay, and render judgment on the record before them. The most liberal construction of this statute is to reverse, if any error appears on the record, although no express decision was had on the exact point in the court below. Then this court must look at the indictment, and see if it contains any charge of an offence prohibited by law; and also, the court must see that if there be such charge, that it is made in the manner required by law.

In this case, the charge is, that the prisoner, as agent of a private company, embezzled; whereas the statute only punishes an agent, as such, in the employ of a corporation agent—in all other cases, though he might in some senses be called agent, yet other words have been employed to designate his character, such as servant, bailee, clerk, or the like. The indictment, as regards the first count, is bad.

The judgment is therefore reversed and remanded, the other judges concurring herein.